UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| COURTNEY JAYNE, individually and as personal representative of the estate of M.Z., | 4:18-CV-04088-KES |
| Plaintiff, | |
| vs. | ORDER DENYING MOTION TO EXCLUDE EXPERT TESTIMONY |
| CITY OF SIOUX FALLS, | |
| Defendant. | |

Plaintiff, Courtney Jayne, moves to exclude the opinion and expert report of defendant's expert witness, Dr. Kenneth Nemire, under Federal Rule of Evidence 702. Docket 24. Defendant, the City of Sioux Falls, opposes the motion. Docket 44. For the reasons that follow, the court denies the motion to exclude expert testimony.

**BACKGROUND**

This is a wrongful death action arising out of five-year old Maggie Zaiger's death at Falls Park, a park owned and operated by defendant, the City of Sioux Falls. Docket 7 ¶¶ 1, 43-59. The Big Sioux River passes over a waterfall at Falls Park. *Id.* ¶ 11. Jayne alleges that during the spring season, the Big Sioux River's flow generates a large amount of foam that covers the river's surface and extends beyond its banks at Falls Park. *Id.* ¶ 1. On March 18, 2018, Jayne brought her three children, including Maggie, to Falls Park for a visit. *Id.* ¶¶ 3,

36. Jayne's group was on the riverbank opposite of Falls Overlook Café, downstream from the Pedestrian Bridge. *Id.* ¶ 3. Jayne alleges that as she was looking away, a witness saw Maggie reach out towards the foam and disappear into the river. *Id.* ¶¶ 3, 38. After approximately 20 minutes, emergency responders were able to pull Maggie from the river. *Id.* ¶ 39. Maggie later passed away at the hospital. *Id.* Jayne brings this action against the City of Sioux Falls based on the City's alleged gross negligence and willful or wanton misconduct. *Id.* ¶ 4. Jayne claims that the City "consciously disregarded an unreasonable and substantial risk of serious bodily harm to patrons of Falls Park, resulting in Maggie Zaiger's death." *Id.*

The City of Sioux Falls designated Kenneth Nemire as an expert witness. Dr. Nemire has a Ph.D. in experimental psychology, which involves the study of human information processing. Docket 34-1 at 3. In his report, dated June 29, 2019, Dr. Nemire provided a human factor analyses of the fall and drowning of Maggie at Falls Park. *Id.* Dr. Nemire's report served as a rebuttal to Jayne's expert witness, Joellen Gill. *Id.* at 2; *see also* Docket 45-2 (Gill's report). In his report, Dr. Nemire addresses each of Ms. Gill's four opinions. Docket 34-1 at 8-14. Additionally, Dr. Nemire provided five of his own opinions:

1. The rocky edge of the canyon walls and the swiftly flowing river presented open and obvious hazards to visitors.
2. The foam on the river did not constitute a hazard separate from the open and obvious hazard of the rocky top of the canyon and flowing river[.]
3. There was no failure of Defendant to adequately guard and warn of the subject hazardous area[.]

4. Defendant's warning sign installed at Falls Park was adequately designed, and most likely was effective at warning of the subject hazards[.]

5. Maggie's mother failed to adequately supervise Maggie[.]

*Id.* at 14. In reaching these opinions, Dr. Nemire reviewed and relied on court documents from the current litigation, photos and documents obtained during discovery, depositions, Gill's expert report, witness interviews, local news articles, the *American National Standard for Safety Colors and for Environmental and Facility Safety Signs*, and other publications referenced in his report. *Id.* at 4-6. Dr. Nemire also conducted a site inspection of Falls Park on June 11, 2019. *Id.* at 6.

Jayne deposed Dr. Nemire on August 20, 2019. Docket 34-2. At his deposition, Jayne's attorney asked Dr. Nemire if he claimed that Maggie tripped and fell. *Id.* at 4. Dr. Nemire responded that he did not think anyone knew what happened, though it was a possibility that she tripped and fell into the water. *Id.* Jayne's attorney asked several follow-up questions regarding Dr. Nemire's response:

> Q: Will you be testifying, or is it your intention to testify, to a reasonable degree of scientific certainty, that is more likely than not that Maggie Zaiger tripped and fell into the water on March 18th, 2018?
>
> A: I think the two most likely scenarios are that she tripped and fell, or she took what's called an air step. She stepped into the foam, perhaps believing that there was a rock surface underneath and not -- not having any solid, stable surface to step on and then she fell. So those are the two most likely possibilities, but it's not possible to determine which of those two occurred.
>
> [Jayne's attorney moved to strike Dr. Nemire's answer as unresponsive and asked the question again.]

3

A: Again, no. It's not possible to determine if it's more likely or not that she tripped, and . . . it's not possible to determine that it's most likely or not that she took an air step.

*Id.*

Jayne moves to exclude the testimony of Dr. Nemire on the grounds that Dr. Nemire's testimony is not relevant and not reliable, and that Dr. Nemire is not qualified as an expert.

## LEGAL STANDARD

In diversity cases, federal law controls whether expert testimony is admissible. *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005). Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R. Evid. 702. Under Rule 702, the trial court acts as a "gatekeeper" by screening a party's proffered expert testimony for its reliability and relevance. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony.").

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b)    the testimony is based on sufficient facts or data;

    (c)    the testimony is the product of reliable principles and methods; and

>   (d)     the expert has reliably applied the principles and
>           methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (quoting *Weisgram v. Marley Co.*, 169 F.3d 514, 523 (8th Cir. 1999)). "The rule clearly 'is one of admissibility rather than exclusion.' " *Id.* (quoting *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991)). Thus, "[t]he exclusion of an expert's opinion is proper only if it is 'so fundamentally unsupported that it can offer no assistance to the jury[.]' " *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (quoting *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995)).

The Eighth Circuit has determined that a district court should apply a three-part test when screening expert testimony under Rule 702.

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon*, 270 F.3d at 686 (internal citations and quotations omitted). With respect to relevancy, expert testimony will be relevant and helpful to the jury if it concerns matters beyond the general knowledge of average individuals. *See United States v. Shedlock*, 62 F.3d 214, 219 (8th Cir. 1995). With respect to an expert's qualifications, Rule 702 recognizes five bases for qualifying an expert, which include "knowledge, skill, experience, training, or education." Fed. R.

Evid. 702. Significantly, "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006).

To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence "that the methodology underlying [the expert's] conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (citations omitted). In making the reliability determination, the court may consider:

> (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operations; and (4) whether the theory or technique is generally accepted in the scientific community.

*Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). Additional factors to consider include: " 'whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.' " *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) (quoting *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008)). "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject" these factors as the particular case demands. *Russell*, 702 F.3d at 456 (citation omitted).

6

Also, when making the reliability inquiry, the court should focus on "principles and methodology, not on the conclusions that they generate." *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012) (citing *Daubert*, 509 U.S. at 595). At times, conclusions and methodology are not entirely distinct from one another, and the court " 'need not completely pretermit judicial consideration of an expert's conclusions.' " *Id.* (quoting *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 15 (1st Cir. 2011)).  But "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (internal quotations omitted).

District courts have discretion in determining whether to admit expert witness testimony under Rule 702. *See In re Air Crash at Little Rock Ark., on June 1, 1999*, 291 F.3d 503, 509 (8th Cir. 2002). "That standard applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion." *Kumho Tire Co.*, 526 U.S. at 152. Nonetheless, the proponent of expert testimony must prove its admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

## DISCUSSION

Jayne moves to exclude the testimony of Dr. Nemire in its entirety. Docket 36 at 6. Jayne objects to all five of Dr. Nemire's opinions from his report and a statement made by Dr. Nemire at his deposition. *Id.* at 5-6, 15.

## I.    Opinion 1

For his first opinion, Dr. Nemire stated, "The rocky edge of the canyon walls and the swiftly flowing river presented open and obvious hazards to visitors." Docket 34-1 at 14. Jayne challenges the relevancy and reliability of this opinion.

### A.    Relevancy

Jayne has identified four specific concerns regarding the relevancy of Dr. Nemire's first opinion. First, Jayne contends that Dr. Nemire's testimony is not helpful to the jury. Docket 36 at 15. Jayne argues that the question of whether a hazard is open and obvious does not require expert testimony because it is within the common understanding of a jury. *Id.* at 15-16.

"Where the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous." *United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011) (internal quotation omitted). In support of her argument, Jayne relies on *Berg v. Johnson & Johnson*, 940 F. Supp. 2d 983 (D.S.D. 2013). In *Berg*, this court stated, "A jury can rely on its own common sense and experiences in forming its conclusion on whether the alleged hazard was open and obvious." *Id.* at 1001.

The City of Sioux Falls contends that Dr. Nemire's expertise in human factors provides information that is not within the common understanding of jurors. Docket 44 at 7. Generally, an expert in human factors analyzes the interaction between human behavior and an object or environment. *See Mihailovich v. Laatsch*, 359 F.3d 892, 915 (7th Cir. 2004). "An expert engaging

8

in such an analysis will consider whether, in light of predictable human behavior, the design or condition of the subject item poses a potential hazard." *Id.* Human factors analysis "is a recognized analytical approach[.]" *Id.* at 919.

Dr. Nemire intends to testify that: (1) the foam provided visual cues to the location of the cliff and river [falling and drowning hazards], rather than being a hazard itself; (2) the foam provided visual cues and indicators contrary to the affordance of safe travel; (3) because of the perceptual cues provided along the canyon wall above the river, a reasonable visitor would expect that the rock ledge would be jagged and at some height above the river; and (4) there were perceptual cues that the foam was on top of the river. *See* Docket 34-1 at 9-10.

The City of Sioux Falls notes that similar human factors testimony has been admitted by other courts. Docket 44 at 7-8. A district court in the Western District of Kentucky admitted expert testimony similar to the opinion of Dr. Nemire. *See Garrity v. Wal-Mart Stores E., Ltd.*, 288 F.R.D. 395 (W.D. Ky. 2012). In *Garrity*, the district court acknowledged that the expert's testimony included matters of common knowledge like ice is slippery or that ice is not always easily detectible. *Id.* at 400. Yet, the court stated that the expert's testimony went beyond those matters of common understanding. *Id.* The expert intended to testify about "how a person views a sidewalk before walking on it, paying particular attention to the effects of one's visual field and the effects that lighting and shadows may have on the ground's surface." *Id.* The court

9

found such testimony would assist the jury in making its determinations. *Id.*; *see also Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986) (finding the expert's testimony that "the yellow color of the curb might prompt the human eye to fill in discontinuities is not a matter within the common knowledge of jurors."); *Burns v. Baylor Health Care Sys.*, 125 S.W.3d 589, 596 (Tex. App. 2003) (finding the expert had specialized knowledge of human visual process that was not within the common knowledge of jurors).

The present case is analogous to *Garrity*. While jurors will be able to look at photographs of the river and rocks at Falls Park and determine whether those hazards are open and obvious based on their own knowledge and understanding, Dr. Nemire's opinion encompasses more than that. Dr. Nemire discusses examples of decisions about interactive strategies based on body-scaled factors, people's perceptions on textural differences in walking surfaces, how visual cues to walkway density alter how people walk on a walkway, and research that shows people will take actions to avoid harms if visual features of an environment specify a potentially adverse outcome. Docket 34-1 at 9. These topics are outside of the common understanding of jurors. Overall, this court finds that Dr. Nemire's first opinion can assist the jurors.

Second, Jayne contends that Dr. Nemire's first opinion is not supported by specialized knowledge because Dr. Nemire's opinion is based on his review of documents and depositions. Docket 54 at 4 n.3. Jayne argues that jurors are equally capable of making judgments based on these sources. *Id.* In *Berg*, this court found that expert testimony based on reading the case documents was

superfluous because "[t]here is no reason why the jury cannot review the same documents and form their own opinions . . . ." *Berg*, 940 F. Supp. 2d at 1000.

Here, Dr. Nemire did not base his opinion solely on his review of case materials. In addition to reviewing documents and depositions from the case, he also reviewed 41 pieces of research material, ranging from interviews to articles on space perception to walking patterns to ergonomics of children. *See* Docket 34-1 at 4-6. Dr. Nemire also conducted a site visit of Falls Park. *Id.* at 6, 7-8. Additionally, Dr. Nemire has a Ph.D. in experimental psychology; he has expertise in human processing of sensation, perception, decision making, response selection, and response execution. *Id.* at 2-3. Dr. Nemire applied his expertise to the features of Falls Park to determine whether the hazards were open and obvious. *See id.* at 2-10. Thus, the court rejects Jayne's argument that Dr. Nemire's opinion was not based on specialized knowledge.

Third, Jayne argues that Dr. Nemire does not point to a single article, book, or item of research that specifically supports his conclusion that the landscape involved in this case presented an open and obvious hazard. Docket 54 at 4-7. Dr. Nemire does not need to point to research that specifically discusses the hazards or visual cues in this case. Rule 702 only requires that the testimony is based upon sufficient facts or data, is the product of reliable principles and methods, and that the expert applies the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. Dr. Nemire does this in his report. *See* Docket 34-1 at 8-10. As discussed above, Dr. Nemire discussed human factors research on visual cues and how a reasonable person

11

would interpret the textural differences on walking surfaces and perceptual cues that indicate height. *Id.* He then applied that research to the features at Falls Park. *Id.* Thus, Dr. Nemire's first opinion meets the requirements under Rule 702.

Fourth, Jayne argues that Dr. Nemire relies solely on his training and experience in forming his opinion and that this cannot be a stand-alone basis for an expert opinion. Docket 54 at 4 n.3. "[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co.*, 526 U.S. at 156; *see also Shuck v. CNH Am., LLC*, 498 F.3d 868, 875 (8th Cir. 2007) (recognizing that "observations coupled with expertise generally may form the basis of an admissible expert opinion."); *Hickerson v. Pride Mobility Prods. Corp.*, 470 F.3d 1252, 1257 (8th Cir. 2006) (holding that a fire causation expert's opinion was admissible where the methodology involved no testing but the application of specialized knowledge to observations of a fire scene).

Dr. Nemire conducted a site visit of Falls Park and applied his knowledge and research on human factors to identify the visual cues and hazards. Docket 34-1 at 6-7, 9-10. Dr. Nemire also reviewed documents from the case, interviews, news articles, and peer-reviewed articles. *Id.* at 4-6. Dr. Nemire permissibly relied on his experience and knowledge when he made observations of visual and perceptual cues at Falls Park. Overall, the court finds that Dr. Nemire's first opinion meets the relevancy standard.

12

### B.    Reliability

Next, Jayne has identified four specific concerns regarding the reliability of Dr. Nemire's first opinion. First, Jayne contends that Dr. Nemire's conclusion that the hazards were open and obvious, despite the foam, is inconsistent with evidence from the City's own employees, Detective Tim Bakke and Officer Verlyn Bleyenberg, who stated the foam actually obscured the hazards. Docket 36 at 16-18. "[Q]uestions of conflicting evidence must be left for the jury's determination." *Hose*, 70 F.3d at 976. A district court should resolve doubts regarding an expert's testimony "in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006). Thus, Dr. Nemire's opinion will not be excluded based on this argument because the jury, not this court, handles these alleged inconsistencies.

Second, Jayne argues that Dr. Nemire's deposition testimony contradicts his opinions in his report. Docket 36 at 19-20. Jayne contends that in his report Dr. Nemire concluded that the rocky top and flowing river presented an open and obvious hazard and the foam did not constitute a separate hazard. *Id.* at 19. But at his deposition, Dr. Nemire testified that he could not identify the exact boundaries of the ledge and river under the foam. *Id.* The City of Sioux Falls argues that Dr. Nemire's deposition testimony does not contradict his report, but even if there was a contradiction, his opinions and testimony would still be admissible. Docket 44 at 11-12.

Jayne's concern is a criticism of Dr. Nemire's results, not his methodology. *See Berg*, 940 F. Supp. 2d at 992 (rejecting an inconsistency

argument as criticism of results, not methodology). If Dr. Nemire's report contradicts his testimony in this case, Jayne can certainly challenge his credibility during cross-examination. *See id.*; *see also Kuhn*, 686 F.3d at 627 (noting that when an expert offers an opinion that conflicts with a previous opinion, the appropriate response from the court is to allow the opposing party to challenge the credibility of the expert). But unless Dr. Nemire's methodology is unreliable, the court will not preclude his testimony. *See Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1121 (8th Cir. 2006).

Third, Jayne alleges that Dr. Nemire failed to consider relevant facts. For example, Jayne argues that Dr. Nemire's opinion is undermined by his failure to investigate hazards he claimed to evaluate. Docket 36 at 20. Jayne notes that Dr. Nemire did not visit Falls Park when foam was present. *Id.* Additionally, Jayne contends that Dr. Nemire did not discuss the 2013 drowning incident. *Id.* at 18.

Jayne challenges the completeness of Dr. Nemire's methodology and the foundation of his opinion. "[A]ttacks regarding the completeness of [an expert's] methodology go to the weight and not the admissibility of his testimony." *Kudabeck v. Kroger Co.*, 338 F.3d 856, 861 (8th Cir. 2003). Jayne's critiques "should be engendered through thorough cross-examination, and not through the wholesale exclusion of the expert's testimony." *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination [and] presentation of contrary evidence . . .

14

are the traditional and appropriate means of attacking shaky but admissible evidence.").

Fourth, Jayne argues that Dr. Nemire's first opinion is unsupported by facts and amounts to generalized speculation. Docket 36 at 20. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988). The court should only exclude an expert's opinion if it is "so fundamentally unsupported that it can offer no assistance to the jury[.]" *Id.*

Dr. Nemire reviewed photographs taken on the day of the incident, case documents, interviews, and depositions. Docket 34-1 at 4, 6-7, 9, 18-21, 25. Additionally, Dr. Nemire conducted a site visit of Falls Park. *Id.* at 6. He took photographs and measurements and examined the features where the incident occurred. *Id.* at 6, 7. The court finds that Dr. Nemire's opinion is not so fundamentally unsupported that it can offer no assistance to the jury.

Lastly, Jayne contends that the court should exclude a portion of Dr. Nemire's first opinion because it invades the province of the jury. Docket 36 at 20-21. Jayne alleges that Dr. Nemire improperly discounted testimony he did not believe to be credible. *Id.* at 20. "An expert may not opine on another witness's credibility." *Engesser v. Dooley*, 457 F.3d 731, 736 (8th Cir. 2006) (citation omitted); *see also Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir. 1995) ("Nor may an expert pass judgment on a witness' truthfulness in the

15

guise of a professional opinion."). An expert's opinion regarding a witness's believability or truthfulness invades "the jury's exclusive province to decide witness credibility." *United States v. Whitted*, 11 F.3d 782, 786 (8th Cir. 1993).

The court does not find any credibility assessment in Dr. Nemire's first opinion, nor does Jayne point to any specific portion of his first opinion where he comments on another witness's credibility. Jayne relies heavily on excerpts of Dr. Nemire's deposition testimony. Docket 36 at 21-22. Jayne alleges that in his deposition, Dr. Nemire admitted to weighing witnesses' credibility. *Id.* at 21 (citing Docket 34-2 at 2). In reviewing the full deposition of Dr. Nemire, the court finds that Dr. Nemire did not admit that he weighed any witnesses' credibility. Instead, Dr. Nemire stated that he evaluated all the evidence that came before him, and he acknowledged that he "weighed [some] evidence more strongly than others." Docket 34-2 at 2. He stated that he did not make any determination about whether some witnesses were more credible than others. *Id.* at 3. Thus, the court finds that Dr. Nemire did not give an opinion on another witness's credibility.

Overall, the court finds that Dr. Nemire's first opinion is reliable. The court does not exclude Dr. Nemire's first opinion.

## II.   Opinion 2

For his second opinion, Dr. Nemire found, "The foam on the river did not constitute a hazard separate from the open and obvious hazard of the rocky top of the canyon and flowing river[.]" Docket 34-1 at 14. Jayne has two concerns regarding the reliability of Dr. Nemire's second opinion.

16

First, Jayne argues that Dr. Nemire's conclusion contradicts testimony from several of the City of Sioux Falls' employees. Docket 36 at 23. Here, Jayne's critique of Dr. Nemire's opinion is based on conflicting evidence. But as stated above, the jury resolves conflicting evidence, not this court. *See Hose*, 70 F.3d at 976.

Second, Jayne alleges that Dr. Nemire failed to follow his own steps in assessing a hazard and therefore, did not use a reasonable or reliable methodology to reach his conclusion. Docket 36 at 23-24. Jayne notes that Dr. Nemire said a critical part of hazard analysis includes analyses of previous accidents, but Jayne alleges that Dr. Nemire admitted that he did not do any independent research/review of the 2013 drownings. *Id.*

Jayne objects to the completeness of Dr. Nemire's methodology. Objections regarding the completeness of an expert's methodology go to the weight, rather than the admissibility, of an expert's testimony. *Kudabeck*, 338 F.3d at 861; *Sphere Drake Ins. PLC*, 226 F.3d at 955. Because Jayne does not oppose the actual methodology chosen by Dr. Nemire or the documents he used, the court finds that Jayne has not identified a sufficient basis for excluding this opinion. Jayne may raise her challenges to the completeness of Dr. Nemire's opinion on cross-examination. *See Kay v. Lamar Advert. of S.D., Inc.*, No. 5:07-CV-05091-KES, 2009 WL 2606234, at *5 (D.S.D. Aug. 21, 2009) (stating cross-examination is the appropriate means for challenging an expert's thoroughness in applying the methodology to the facts of the case).

17

Overall, the court finds that Dr. Nemire's second opinion is reliable, and the court does not exclude this opinion.

### III. Opinion 3

For his third opinion, Dr. Nemire concluded, "There was no failure of [d]efendant to adequately guard or warn of the subject hazard area[.]" Docket 34-1 at 14. Jayne has two concerns regarding the reliability of this opinion.

First, Jayne argues that Dr. Nemire's third opinion should be excluded because his current opinion contradicts his testimony in a previous case. Docket 36 at 25-26. If Dr. Nemire's previous, or even present, testimony contradicts his opinion in this case, Jayne can challenge his credibility during cross-examination. *See Berg*, 940 F. Supp. 2d at 992; *Polk Cty. v. Populous, Inc.*, 2013 WL 12284713, at *4 (S.D. Iowa July 12, 2013) (holding that "[t]o the extent [the plaintiff] believes [the defendant's expert] has made prior inconsistent statements, such inconsistencies can be addressed in cross-examination.").

Second, Jayne urges the court to exclude this third opinion because Dr. Nemire based his opinion on assumptions that were not supported by facts. Docket 36 at 26. Jayne's argument does not require the exclusion of Dr. Nemire's testimony. *See Hose*, 70 F.3d at 974 (stating the factual basis of an expert's opinion goes to credibility, not admissibility). Rather, if Jayne believes that Dr. Nemire based his opinion on incorrect factual assumptions, then Jayne can examine the factual basis of Dr. Nemire's opinion during cross-examination. *See Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007)

(stating the party had the opportunity to challenge the expert's assumptions and methodology through cross-examination); *Munroe v. U.S. Xpress, Inc.*, No. 4:06-CV-04103-LLP, 2007 WL 2476763, at *2 (D.S.D. Aug. 27, 2007) (rejecting the plaintiff's challenge to expert's opinion on the grounds that it was based on erroneous factual assumptions and stating the plaintiff should examine the expert's factual basis on cross-examination).

Overall, the court finds that Dr. Nemire's third opinion is reliable. Thus, the court does not exclude Dr. Nemire's third opinion.

## IV.   Opinion 4

For his fourth opinion, Dr. Nemire stated, "Defendant's warning sign installed at Falls Park was adequately designed and most likely was effective at warning of the subject hazards[.]" Docket 34-1 at 14. Jayne challenges the reliability of this opinion.

First, Jayne argues that Dr. Nemire's opinion is inadmissible because he did not scientifically verify the warning sign's effectiveness. Docket 36 at 27. Jayne notes that Dr. Nemire stated that he always bases his opinion on scientific research, but he admitted that he did not do any testing to determine whether people would read, notice, or comply with the sign at Falls Park. *Id.* (citing Docket 34-2 at 22).

An examination of Dr. Nemire's method is required to determine whether Jayne's argument has merit. Dr. Nemire analyzed the components of the warning sign to determine whether it was an effective warning. Docket 34-1 at 11-12. In Dr. Nemire's report, he laid out the numerous materials he reviewed.

19

*Id.* at 11-13. He reviewed the actual warning sign and a map of Falls Park. *Id.*
Dr. Nemire's report disclosed his investigation that included a site inspection
where he examined the features of the system; he also conducted a preliminary
hazard analysis and a review of Gill's expert report. *Id.* at 6, 7, 11-13. Dr.
Nemire's conclusions are natural extensions of Gill's findings, his review of the
warning sign, the location of the sign and the hazards at Falls Park, and other
material, along with his extensive experience in experimental psychology and
human factors engineering.

Contrary to Jayne's argument, Dr. Nemire's opinion is reliable even
though he did not test the effectiveness of the warning sign. Although his
opinions have not been tested nor subject to peer review, Dr. Nemire's opinions
are based on his review of other peer-reviewed material. Dr. Nemire cited
several publications that discuss the effectiveness of warning signs. *Id.* at 4-6,
11-13. Dr. Nemire studied the warning sign at Falls Park, applied his research
and knowledge of effective warning signs to the warning sign in this case, and
then explained why the warning sign was effective. He analyzed the warning
sign's signal words, symbols, description of hazard, instructions on how to
comply with the warning, and the consequences of ignoring the warning. *Id.* at
12-13; *see also Donner v. Alcoa, Inc.*, 2014 WL 12617747, at *2 (W.D. Mo. Dec.
19, 2014) (finding expert's opinion to be reliable even though he did not test the
effectiveness of the warnings because the expert studied the actual warnings
and noted why the warnings were deficient); *Thierfelder v. Virco, Inc.*, 502 F.
Supp. 2d 1025, 1032 (W.D. Mo. 2007) (finding expert's testimony reliable

because the expert "read the actual warning as it existed on the original product and specifically noted what elements were missing from it.").

Additionally, the components of effective warning signs and human factors research is generally known and accepted within the engineering community. *See Burks v. Abbott Labs.*, 917 F. Supp. 2d 902, 921 (D. Minn. 2013) (holding warning and human factors expert's "opinions about the adequacy and effectiveness of the warnings provided are based on well-established theories regarding how humans interact with warning labels."); *Michaels v. Mr. Heater, Inc.*, 411 F. Supp. 2d 992, 999 (W.D. Wis. 2006) ("[The witness] is an expert i[n] human factors engineering. Although he performed no studies or tests in conjunction with this case, the theories and methods upon which he relies are recognized by the engineering community."). Dr. Nemire's review and application of peer-reviewed materials—combined with his education and experience—provides a reliable basis for his opinion.

Second, Jayne contends that Dr. Nemire provided inconsistent and contradictory testimony/opinions. For example, Jayne notes that Dr. Nemire stated that Falls Park's warning sign did not meet standards, but he also stated that he would never recommend that a client use a warning sign that does not comply with the standards. Docket 36 at 28. Jayne cites to *Berg*, where this court stated, "Suspicions would arise if an expert were to propose testimony for litigation and then refuse to stand behind those findings in the scientific community." *Berg*, 940 F. Supp. 2d at 992 n.6. But this is not a basis for exclusion. This is a criticism of Dr. Nemire's results, not his methodology,

21

and goes to the credibility and weight of Dr. Nemire's opinion. *See id.* at 992. If Dr. Nemire's previous, or even present, research contradicts his testimony in this case, Jayne can challenge his credibility and results during cross-examination. *See id.*

Jayne also notes that Dr. Nemire's opinion contains contradictions. Docket 36 at 29-30. Jayne alleges that Dr. Nemire opined that the sign's location was close enough, but it was not oriented effectively. *Id.* at 30 (citing Docket 34-2 at 20). Jayne argues that Dr. Nemire never explained this contradiction, and it illustrates that Dr. Nemire did not apply the principles that he testified were important in evaluating a warning sign's effectiveness. *Id.*

Here, Jayne does not challenge the actual methodology used by Dr. Nemire in formulating his opinions. Instead, Jayne's argument goes to the completeness of Dr. Nemire's methodology and his results. And such attacks go to the weight, rather than the admissibility, of an expert's testimony. *See Kudabeck*, 338 F.3d at 861; *Sphere Drake Ins. PLC*, 226 F.3d at 955. Because Jayne does not oppose the actual methodology chosen by Dr. Nemire, the court finds that Jayne has not identified a sufficient basis for excluding this opinion. Jayne may raise her challenges to the completeness of Dr. Nemire's opinion on cross-examination. *See Kay*, 2009 WL 2606234, at *5.

## V.    **Opinion 5**

For his fifth opinion, Dr. Nemire found, "Maggie's mother failed to adequately supervise Maggie[.]" Docket 34-1 at 14. In his report, Dr. Nemire provided several findings in support of this conclusion. *Id.* at 13-14. Jayne

challenges three of these findings: (1) Dr. Nemire opined that Ms. Melendez was standing 40-feet from the river's edge based on Dr. Nemire's distance calculations using photogrammetry; (2) Dr. Nemire used average walking speeds and distances in analyzing whether Jayne effectively monitored the child; and (3) Dr. Nemire conducted an observational study on supervision of young children at Falls Park. *Id.* at 13-14; Docket 36 at 31-38. Jayne's concerns pertain to Dr. Nemire's qualifications and the relevancy and reliability of his opinions.

### A.   Qualifications

Jayne contends that Dr. Nemire's training and education do not qualify him as an expert in photogrammetry. Docket 36 at 36. Dr. Nemire defined photogrammetry as "[t]he science of estimating measurements by using photographs." Docket 34-2 at 17. In his report, Dr. Nemire determined that Ms. Melendez was 40-feet away from the river's edge by using his camera. Docket 34-1 at 13. Dr. Nemire used a single-lens reflex camera and started at the river's edge; he attempted to frame the view captured in two photographs from Ms. Melendez in his own camera. Docket 34-2 at 17. Dr. Nemire "kept moving side to side and eventually back until [he] was at a location that reproduced everything in [his] viewfinder that was shown" in the photographs. *Id.* Dr. Nemire stated that he was able to find the two locations that replicated the views from Ms. Melendez's photographs. *Id.* Then, Dr. Nemire used a tape measure to determine the 40-feet distance. *Id.* For his rate of error, Dr. Nemire stated that it was plus or minus a foot or two. *Id.*

Under Rule 702, a witness can be qualified as an expert based on the witness's knowledge, skill, experience, training, or education. Fed. R. Evid. 702. "[F]or an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Here, Dr. Nemire qualifies as an expert in photogrammetry based on his experience. At his deposition, Dr. Nemire described his background in photogrammetric analyses. Docket 34-2 at 17. Dr. Nemire stated that he has done such analysis with two other methods. *See id.* Dr. Nemire's experience with photogrammetry, even if he employed a different method of photogrammetry here, has a close relationship to the opinion he gives in the present case. Thus, the court finds Dr. Nemire is a qualified expert on photogrammetry. Any gaps in Dr. Nemire's qualifications go to the weight of his testimony, not admissibility, and Jayne can use cross-examination to scrutinize any gaps. *See Robinson*, 447 F.3d at 1100.

### B.  Relevancy

#### 1.  Walking Speed

Jayne challenges the relevancy of Dr. Nemire's walking speed opinion. In his report, Dr. Nemire concluded that Jayne did not adequately supervised Maggie based on Jayne and Maggie's walking speeds and the alleged distance between Jayne and Maggie. Docket 34-1 at 13. Dr. Nemire found that based on the average walking/running speed of an adult female and a child, Jayne could not have walked or ran to where Maggie fell and reached for her in time. *Id.* Jayne argues that Dr. Nemire's discussion about walking speeds is not helpful

to the jury because walking speed is something that everyone understands. Docket 36 at 31-32.

Jurors may have a common understanding on whether a person is walking relatively fast or slow, but Dr. Nemire will testify to information that is beyond a juror's common understanding, like the average walking speeds of an adult and child and calculations on how far a person can walk in a set amount of time. In forming this opinion, Dr. Nemire did not rely on "common sense" but instead relied on generally accepted principles, a peer-reviewed article, and his training/experience in making his conclusions. Docket 34-1 at 13. Additionally, Dr. Nemire is a human factors expert and has "written numerous papers about the . . . mechanics of human walking and falling." *Id.* at 3. Thus, the court finds that Dr. Nemire's walking speed testimony will assist the jurors.

### 2.   Photogrammetry

Next, Jayne challenges the relevancy of Dr. Nemire's opinion on Ms. Melendez's distance from the children. Docket 36 at 35-36. In his report, Dr. Nemire stated that during his site visit to Falls Park, he hypothesized that Ms. Melendez was probably 40-feet from the river's edge, though Ms. Melendez and Ms. Jayne stated they were no more than 10-15 feet from Maggie when Maggie fell. Docket 34-1 at 13. Jayne argues that where the picture was taken two minutes before the fall has no bearing on where Jayne was at the time of the fall. Docket 36 at 36. The City of Sioux Falls argues that given the factual uncertainty about what happened, when it happened, and where people were located, Dr. Nemire's measurement between Ms. Melendez and the river's edge

shortly before Maggie fell is relevant and responsive to Gill's opinion. Docket 44 at 26.

Jayne's argument focuses on the relevancy standard articulated in Rule 401 of the Federal Rules of Evidence. But for this motion, expert testimony is relevant and helpful to the jury if it concerns matters beyond the general knowledge of average individuals. *See Shedlock*, 62 F.3d at 219. Here, Dr. Nemire's conclusion that the picture was taken 40-feet away from where Maggie fell is based on photogrammetry. Photogrammetry is "the science of gathering dimensions from photographs[.]" *Heatherly v. Alexander*, 421 F.3d 638, 645 (8th Cir. 2005). The court finds that photogrammetry is beyond the general knowledge of average individuals, and therefore, Dr. Nemire's opinion is relevant under Rule 702.

Additionally, the court finds this evidence to be relevant under Rule 401. The location of the children and one of the adults when the photograph was taken is relevant to whether Maggie was properly supervised while at Falls Park. The jury, not this court, has the duty to determine whether this photograph and the locations determined from it have any bearing on where Jayne was or whether Jayne was adequately supervising Maggie. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions[.]"). Overall, the court finds that Dr. Nemire's fifth opinion is relevant.

### C.     Reliability

#### 1.     Dr. Nemire's Observational Study

Jayne has several concerns regarding the reliability of Dr. Nemire's observational study. During his site visit, Dr. Nemire observed 8 groups with a total of 26 young children along the river at Falls Park to determine how closely the accompanying adults monitored the children. Docket 34-1 at 14. In his report, Dr. Nemire articulated four observations and attached photographs. *Id.* at 14, 33-35.

First, Jayne contends that Dr. Nemire assumed that Jayne knew they were approaching a river and the river was not obscured by the foam. Docket 36 at 31. The Eighth Circuit has explained that the factual basis of an expert's opinion relates to credibility rather than admissibility. *Hose*, 70 F.3d at 974. If Jayne believes that Dr. Nemire based his opinion upon the erroneous facts, Jayne "will need to examine the factual basis for his opinions in cross-examination." *Munroe*, 2007 WL 2476763, at *2.

Second, Jayne argues that Dr. Nemire's study of children at Falls Park is inadmissible because (1) the study's conditions were not substantially similar as the day of the incident and (2) the study is not scientifically valid and reliable. Docket 36 at 32-33. Jayne cites to an Eighth Circuit products-liability case where the Court of Appeals affirmed a district court's exclusion of compression tests. *Id.* at 33 (citing *Loomis v. Wing Enters., Inc.*, 756 F.3d 632, 634 (8th Cir. 2014)). In *Loomis,* the Court of Appeals stated that " '[i]t is settled law that evidence of experimental tests is inadmissible absent a foundational

27

showing that the tests were conducted under conditions substantially similar to those surrounding the incident at issue.' " 756 F.3d at 634-35 (quoting *Cowens v. Siemens-Elema AB*, 837 F.2d 817, 820 (8th Cir. 1988)).

Additionally, Jayne argues that Dr. Nemire's observations "were far from a scientific study." Docket 36 at 33. Jayne alleges that Dr. Nemire self-selected the children from an undefined number of parkgoers and knew nothing about the adults or children he picked. *Id.* at 33-34. Jayne argues that because Dr. Nemire made no attempt to control the variables, the study is not repeatable or verifiable in any scientific way. *Id.* at 34. The City of Sioux Falls alleges that Dr. Nemire's observations "were not an experimental test intended to duplicate a product failure." Docket 44 at 24.

Dr. Nemire's observational study was not an experimental test. Dr. Nemire stated that he did not intend for his observations to be a scientific study. Docket 34-2 at 16. In his deposition, Dr. Nemire stated that he presented these observations "as a demonstration of behavior of adults and children in the park" on the day of his site visit. *Id.* Thus, the standard articulated in *Loomis* is not applicable because this is not a products-liability case and Dr. Nemire did not conduct an experimental test.

Although that standard is not applicable, Dr. Nemire's opinions must still be based on a scientifically valid methodology. *See Barrett*, 606 F.3d at 980. In determining whether Dr. Nemire's methodology is scientifically valid, three of the four reliability factors are relevant: (1) "whether the theory or technique can be or has been tested;" (2) "whether the theory or technique has

28

been subjected to peer review or publication;" and (3) "whether the theory or technique is generally accepted in the scientific community." *Russell*, 702 F.3d at 456.

First, though Dr. Nemire's observations have not been tested, they could be tested. At his deposition, Dr. Nemire stated that "if [he] were to do . . . a Chi-Square test on the data, [he] would . . . have significant findings of children staying away from the river." Docket 34-2 at 16. Additionally, similar observational studies conducted by Dr. Nemire have been tested. *See* Docket 44 at 24; Docket 45-6; Docket 45-7.

Second, the methodology used by Dr. Nemire here, an observational study, has been used by Dr. Nemire before. *See* Docket 45-6 (an observational study of pedestrians' use of curb ramps); Docket 45-7 (an observational study of walking backwards without looking). Dr. Nemire published two studies that used a similar method as his observational study at Falls Park. In both prior studies, Dr. Nemire observed random, unknown individuals in public over a set period of time. Docket 45-6 at 2-3; Docket 45-7 at 3-4. He had video recordings of both studies' participants. Docket 45-6 at 2-3; Docket 45-7 at 4. After collecting all the data in his two prior studies, Dr. Nemire performed chi-square analyses on the data. Docket 45-6 at 3; Docket 45-7 at 4.

Here, Dr. Nemire employed a similar procedure. During his site visit, Dr. Nemire observed 8 groups with 26 young children, and he photographed all of the groups he observed. Docket 34-1 at 14. As noted above, Dr. Nemire did not perform a chi-square analysis on the observations from Falls Park. Docket 34-2

29

at 16. At his deposition, Dr. Nemire explained why he did not perform the chi-square test. *Id.* "Because I've done Chi-Square tests, I know that if you have zero instances of an event with 26 -- zero instances of a frequency of one event out of the possible, you know, 26 in this case, then I would find a statistical significance using a Chi-Square test." *Id.* Dr. Nemire stated that if he did a chi-square test there would have been "significant findings of children staying away from the river." *Id.*

Third, Dr. Nemire relied on research about adequate supervision and applied it to his observations, a methodology previously relied on and published by Dr. Nemire. Dr. Nemire's prior published studies demonstrate that observational studies regarding human behaviors are generally accepted in the scientific community. *See* Docket 45-6; Docket 45-7. Overall, the methodology used by Dr. Nemire is scientifically valid.

Additionally, Jayne argues Dr. Nemire's observational study should be excluded under Rule 403. Docket 36 at 35. Jayne contends that if this testimony is admitted, it will likely confuse the jury and lead jurors to think Dr. Nemire's observations were scientific. *Id.* Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . misleading the jury[.]" Fed. R. Evid. 403. The court found that Dr. Nemire's opinion regarding his observations of supervision at Falls Park was permissible under Rule 702 because Dr. Nemire's methodology was scientifically valid. Thus, the jury will not be misled to believe Dr. Nemire's

observations are scientific because Dr. Nemire's observations are in fact scientific. The court finds that Dr. Nemire's observational study is reliable.

### 2.    Photogrammetry

Jayne also challenges the reliability of Dr. Nemire's opinion that the photograph was taken 40-feet away. Docket 36 at 36. Jayne argues that Dr. Nemire used a "highly suspect process" to come up with his opinion. *Id.* The City of Sioux Falls argues that photogrammetry is accepted in the scientific community and Dr. Nemire has experience using this method. Docket 44 at 25.

Dr. Nemire used a form of photogrammetry to determine where Ms. Melendez was when she captured two photographs. Photogrammetry has a long, recognized history of reliability in the scientific and judicial community. *See generally, United States v. Quinn*, 18 F.3d 1461, 1464-65 (9th Cir. 1994) (affirming district court's admission of an expert's opinion based on photogrammetry); *United States v. Williams*, 235 F. App'x 925 (3d Cir. 2007); *United States v. Kyler*, 429 F. App'x 828 (11th Cir. 2011); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802 (D. Minn. 2011). Dr. Nemire explained his method in determining the distance and his rate of error. While other methods of calculating distances in photographs may be available, so long as the method employed by Dr. Nemire was scientifically valid, Jayne's "mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony." *Synergetics, Inc.*, 477 F.3d at 956.

Additionally, Jayne argues that Dr. Nemire's conclusion is "deeply flawed" because "he did not know a wide range of facts regarding the picture

taken by Ms. Melendez[.]" Docket 36 at 37. Questions regarding the factual basis of Dr. Nemire's opinion can be asked on cross-examination and is not a basis for exclusion of such testimony. *See Bonner*, 259 F.3d at 929. The court finds Dr. Nemire's opinion regarding the distance of Ms. Melendez in the photograph to be reliable and admissible.

## VI.    Opinion 6

Jayne alleges that Dr. Nemire provided a sixth opinion at his deposition. Docket 36 at 38. Dr. Nemire's alleged opinion pertains to whether Maggie tripped over a rock and fell or took an "air step" and fell. *Id.* Jayne argues that the court should preclude Dr. Nemire from giving this opinion because Dr. Nemire did not put this opinion in his report but mentioned it at his deposition and therefore, is an untimely opinion. *Id.* at 38-39. The City of Sioux Falls argues that Dr. Nemire only discussed the mechanisms of Maggie's fall in response to a question from Jayne's attorney. Docket 44 at 26-27.

Both Dr. Nemire and the City state that Dr. Nemire will not offer an opinion as to the likely cause of Maggie's fall. Docket 44 at 27; Docket 34-2 at 4. Because the City and Dr. Nemire do not intend to offer this opinion, the court will reserve its ruling. If, however, questioning at trial begins to approach this topic, either party may make an objection.

### CONCLUSION

The court concludes that Dr. Nemire's proffered testimony is relevant and reliable. The court also finds that Dr. Nemire is qualified to testify as an expert. Therefore, his testimony will not be excluded. Thus, it is

ORDERED that Jayne's motion to exclude Dr. Nemire's expert testimony (Docket 24) is denied.

Dated May 5, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE