UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| COURTNEY JAYNE, individually and as personal representative of the estate of M.Z., <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF SIOUX FALLS, <br><br> Defendant. | 4:18-CV-04088-KES <br><br><br> ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Courtney Jayne, filed a complaint alleging that the City of Sioux Falls' gross negligence or willful or wanton misconduct caused the wrongful death of Jayne's daughter, Maggie Zaiger. Docket 7. Defendant, the City of Sioux Falls, moves for summary judgment. Docket 28. Jayne opposes the motion. Docket 51. For the following reasons, the court denies the City's motion for summary judgment.

**FACTUAL BACKGROUND**

The facts, viewed in the light most favorable to the non-moving party, are as follows:

Falls Park is a public park where the Big Sioux River passes over a waterfall in Sioux Falls, South Dakota. Docket 29 ¶¶ 1-2. The City of Sioux Falls owns and operates Falls Park. Docket 7 ¶ 1. Falls Park has several natural hazards including turbulent water, periodic foam, and rock formations

that are uneven, jagged, and slippery when wet. Docket 29 ¶ 4. During the spring runoff season, foam builds up regularly at Falls Park. *Id.* When the foam builds up, it covers the river and can obscure the rocks and the rocks' edges. Docket 52 ¶ 4.

Since 1980, ten people have drowned at Falls Park. Docket 29 ¶ 8. Before the present case, the most recent drownings at Falls Park occurred in 2013. *Id.* ¶ 9. In March of 2013, a six-year old boy, Garrett Wallace, fell into the river while playing in the foam. *Id.* ¶¶ 10-11. The foam was approximately 10 to 15 feet deep where Garrett fell in. *Id.* ¶ 12. Garrett's sister and a bystander jumped into the water to rescue Garrett. *Id.* ¶¶ 10, 13-14. Garrett was able to get out of the river, but the two rescuers drowned. *Id.* ¶¶ 15-16; Docket 52 ¶ 15.

Following the 2013 incident, the City conducted a special review of Falls Park. Docket 29 ¶ 17. The City discussed various options to address the conditions at Falls Park like fencing, signage, temporary barricades, park rangers, rescue devices, anchors, and de-foaming chemicals, but the focus of the meeting was on aiding first responders. *Id.* ¶¶ 21, 25; Docket 52 ¶¶ 21, 25. The City's incident review did not analyze the foam conditions at Falls Park or what attracted Garrett to the water. Docket 29 ¶ 22; Docket 52 ¶ 25. The City did not consider the foam to be a hazard, though several first responders' reports, which the City reviewed prior to the incident review, noted the involvement of the foam in the 2013 deaths. Docket 29 ¶ 23; Docket 52 ¶¶ 23, 35.

As part of the 2013 incident review, the City updated the language of the existing warning signs and installed additional warning signs at Falls Park. Docket 29 ¶ 27. The updated signs warned of slippery rocks, no swimming, turbulent water, and supervising children. *Id.* ¶ 28. The signs also instructed parents to keep children a safe distance from the water's edge. *Id.* Additionally, the City installed anchor points to help in rescue operations, but did not implement rescue devices, defoaming agents, or fencing. *Id.* ¶¶ 30-33. The parties dispute the City's rationale for not installing fencing. *Id.* ¶¶ 33, 34; Docket 52 ¶¶ 33, 34. In 2016, a training exercise for the City identified portable fencing and increased patrol as best practices, but the City never implemented either recommendation. Docket 52 ¶ 38.

On March 18, 2018, Jayne visited Falls Park with her three daughters, a friend, and her friend's two children. Docket 29 ¶ 47. After visiting the park's observation deck, the group walked towards what they believed was a snow pile. *Id.* ¶ 50. The snow pile was actually foam that had piled up on the river and extended onto the riverbank. *Id.* ¶ 51; Docket 52 ¶ 51. The foam's height was estimated to be between 20 and 30 feet. Docket 29 ¶ 52. This large accumulation of foam had happened "a handful of times" prior to this date. Docket 52 ¶ 52; Docket 38-3 at 9.

According to police reports, one of Jayne's daughters, Maggie Zaiger, and another child approached the foam pile. Docket 29 ¶ 53. At some point, Maggie fell into the river. *Id.* ¶ 54. Maggie's fall occurred in the same general location as Garrett's fall in 2013. *Id.* ¶ 57. Jayne and her friend attempted to find

3

Maggie but were unable to locate her in the river. *Id.* First responders found Maggie 15 minutes after she fell in; she was transported to the hospital where she later died. *Id.* ¶¶ 58-59. After Maggie's fall, the City conducted a special review of Falls Park. *Id.* ¶ 60. Based on the review, the City constructed a new viewing platform at the location where both Garrett and Maggie fell. *Id.* ¶ 61.

## LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must inform the court of the basis for its motion and also identify the portions of the record that show there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When considering

a summary judgment motion, the court views the facts and the inferences drawn from such facts " 'in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

In South Dakota, municipalities have immunity "from liability for negligence in connection with land open to the public for recreational use." *Fischer v. City of Sioux Falls*, 919 N.W.2d 211, 215 (S.D. 2018) (citing SDCL §§ 20-9-20 and -21). But municipalities do not have recreational immunity for gross negligence or willful or wanton misconduct claims in connection with land open to the public for recreational use. SDCL § 20-9-22(1); *see also Fischer*, 919 N.W.2d at 214.

According to South Dakota case law, "gross negligence" and "willful or wanton misconduct" have the same meaning. *Fischer*, 919 N.W.2d at 215. These terms "refer to a category of tort that is different in kind and characteristics than negligence." *Id.* (internal quotation omitted). Negligence and willful or wanton misconduct claims differ in the types of risk and harm, the defendant's mental state, and the probability of the harm. *See id.* at 215-16.

For the type of risk, "[n]egligence involves an unreasonable risk of harm to another[.]" *Id.* at 215 (internal quotation omitted). Willful or wanton misconduct requires risk that is "substantially greater than that which is necessary to make [the] conduct negligent." *Holzer v. Dakota Speedway, Inc.*,

5

610 N.W.2d 787, 793 (S.D. 2000) (internal quotation omitted). As for the type of harm, "a plaintiff alleging negligence must prove merely that some harm is possible[.]" *Fischer*, 919 N.W.2d at 215. A plaintiff alleging willful or wanton misconduct must prove that the harm threatened was " 'an easily perceptible danger of death or substantial physical harm[.]' " *Id.* (quoting Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 1965)).

The defendant's mental state is an element of willful or wanton misconduct claims; there is no such element for negligence claims. *Id.* The focus of a negligence claim is " 'whether the defendant has deviated from the required standard of reasonable care, not his mental state at the time of the conduct.' " *Id.* (quoting *Papke v. Harbert*, 738 N.W.2d 510, 516 (S.D. 2007)). For willful or wanton misconduct, the plaintiff must prove that "the defendant acted with a culpable mental state." *Id.* at 215-16. "The defendant must *know or have reason to know* of the risk and must in addition proceed without concern for the safety of others . . . ." *Id.* at 215 (alteration in original) (internal quotation omitted).

For the probability of the harm, "a plaintiff alleging willful or wanton misconduct must prove a substantial probability of serious physical harm." *Id.* The injury must be "probable." *Lee v. Beauchene*, 337 N.W.2d 827, 829 (S.D. 1983). For ordinary negligence, the injury must only be "possible." *Id.*

Whether a defendant is negligent or "acts willfully, wantonly, or recklessly" is generally a jury question. *Gabriel v. Bauman*, 847 N.W.2d 537, 542 (S.D. 2014). A court should not grant summary judgment when "the

6

undisputed facts are such that reasonable minds might differ in interpreting them in arriving at different conclusions on whether the defendant was willful, wanton, or reckless." *Id.* But "when a plaintiff's [willful or wanton misconduct] cause of action simply resembles ordinary negligence, summary judgment is appropriate." *Fischer*, 919 N.W.2d at 216.

Jayne alleges that the City is not entitled to recreational immunity because the City's conduct constituted gross negligence or willful or wanton misconduct. Docket 51 at 3-6. The City argues that it is entitled to summary judgment for two reasons. First, the City alleges that Jayne's cause of action is ordinary negligence and not willful or wanton misconduct. Docket 30 at 9. Second, the City contends that Jayne has not met her burden of showing that the City's conduct amounts to willful or wanton misconduct. *Id.* at 1, 12.

## I. Ordinary Negligence

The City argues that Jayne's cause of action resembles ordinary negligence, and therefore, the City is entitled to immunity under SDCL §§ 20-9-20 and -21. *Id.* at 9-10. The City alleges that Jayne used a duty-breach framework in her complaint, and that framework does not apply to willful or wanton misconduct claims. *Id.* at 9. Jayne contends that her use of duty, breach, and proximate cause does not transfer her willful or wanton misconduct claim to mere negligence. Docket 51 at 44-45.

In her complaint, Jayne alleges that the City "had a duty not to engage in gross negligence or willful or wanton misconduct" for the safety of its park patrons and the City "breached that duty by consciously disregarding an

7

unreasonable and substantial risk of serious bodily harm to patrons of Falls Park." Docket 7 ¶¶ 44-45. Jayne alleges that the City engaged in gross negligence and willful or wanton misconduct because the City knew of the dangers associated with the foam and knew that serious harm was probable, but "intentionally and consciously chose not to" install fencing around the park to protect against the dangers of the Big Sioux River. *Id.* ¶¶ 47-56. The complaint alleges each of the elements for willful or wanton misconduct stated above. Thus, the court finds that Jayne's complaint does not allege ordinary negligence and sufficiently alleges willful or wanton misconduct.

## II.   Gross Negligence and Willful or Wanton Misconduct

The City argues that the record does not establish the elements of willful or wanton misconduct. Docket 53 at 2. Jayne argues that she has presented evidence that raises material factual disputes as to whether the City's conduct constitutes gross negligence or willful or wanton misconduct. Docket 51 at 27.

### A.   Knowledge of Probable Harm to Maggie

To establish willful or wanton misconduct, a plaintiff must prove that the defendant knew or had reason to know of the risk and proceeded without concern for the safety of others. *Fischer*, 919 N.W.2d at 215.

First, the City argues that there is no evidence that the City knew that "it was all but certain" that a child at Falls Park would fall into the river and drown due to the attractiveness of the foam despite the natural cues and posted warnings. Docket 53 at 3. Jayne argues that there is evidence in the

8

record that the City knew or had reason to know of the danger of serious physical harm the foam presented after the 2013 drownings. Docket 51 at 32.

There is evidence in the record that creates a question of fact whether the City knew or had reason to know of the serious harm the foam presented. The parties dispute whether the City knew the buildup of foam was a hazard prior to Maggie's death. Docket 29 ¶ 23; Docket 52 ¶ 23. But regardless of whether the City labeled it a hazard, there is evidence in the record that the City knew the foam built up periodically, accumulated in large piles, and sometimes covered the rocks' edges. *See* Docket 38-1 at 21; Docket 38-3 at 9; Docket 38-13 at 10.

Additionally, it is undisputed that a similar incident occurred in March of 2013. Docket 29 ¶¶ 9-16. There is evidence in the record that witnesses saw Garrett interacting with the foam before he fell into the river. *Id.* ¶ 11; Docket 52 ¶ 23; Docket 38-14 at 4. And the foam stood over 10 feet tall in the location of both children's falls. Docket 29 ¶¶ 12, 52. Thus, there are facts in the record that a reasonable juror could find that the City knew that the foam was dangerous.

Next, the City argues that the undisputed facts do not establish that the City acted without concern for the safety of others. Docket 30 at 10. The City contends that the undisputed facts show that it took numerous measures to identify and address safety concerns at Falls Park. *Id.* at 10-11; *see also* Docket 53 at 5-13. Jayne argues that "[a] jury should decide whether the City's conduct evidenced concern for the safety" of others. Docket 51 at 27.

9

There is evidence in the record that creates a question of fact whether the City proceeded without the concern for the safety of others. After the 2013 incident, the City did not consider the buildup of foam to be a hazard. Docket 29 ¶ 23. Additionally, the City installed warning signs, but the signs did not contain a warning about the high levels of foam. *Id.* ¶¶ 27-28; Docket 52 ¶ 28. The City also installed anchors to assist in rescue operations. Docket 29 ¶ 30. But the City did not install any type of fencing, place life rings or other rescue devices out, or use any defoaming agents. *Id.* ¶¶ 31-32. As Jayne argues, a reasonable jury could infer that the City acted without concern for the safety of others by implementing some safety practices but not others. Docket 51 at 35-39.

### B.   Magnitude of the Risk of Harm

For the City's conduct to be considered willful or wanton misconduct, "the risk involved must be substantially greater than that which is necessary to make [the] conduct negligent." *Fischer*, 919 N.W.2d at 215 (internal quotation omitted). Additionally, "the harm threatened must be an easily perceptible danger of death or substantial physical harm[.]" *Id.* (alteration in original) (internal quotation omitted).

There is evidence in the record that creates a question of fact whether the City of Sioux Falls created a risk that a park patron would be seriously injured by falling into the river because of the foam. As noted above, the City was aware that the high levels of foam were present during the spring season, that the foam collected in high traffic areas of the park, that the foam extended

10

beyond the riverbank and covered the rocks' edges, and that a previous fall occurred when a child was interacting with foam. The "danger of death or substantial physical harm" is "easily perceptible" when the potential exists for a child to fall into the rushing water and drowned when park patrons can interact with the large amount of foam and the foam obscures the water and rock edges. *See Reed v. Union Resort, LLC*, No. 5:17-CV-05047-JLV, 2019 WL 1324842, at *6 (D.S.D. Mar. 25, 2019).

### C.  Probability of Maggie's Injury

For conduct to be considered willful or wanton misconduct, there must be "a substantial probability of serious physical harm." *Fischer*, 919 N.W.2d at 215. "[T]he hazard must be so great that the injury will *probably* result and that liability does not exist if the injury may only *possibly* result." *Espeland v. Green*, 54 N.W.2d 465, 468 (S.D. 1952).

The City argues that it "did not know of a probable risk of death associated with the foam." Docket 53 at 3. The City contends that after the 2013 incident, its actions must have been sufficient because no further incidents occurred between 2013 and 2018. *Id.* at 4. The City also argues that park attendance and incident statistics support the conclusion that a child drowning at Falls Park was merely possible and not probable. *Id.* at 4-5.

Jayne's theory of the case, if believed by the jury, could establish probability. The jury could find that the City knew the foam would build up on the river's surface and obscure the rocks' edges, and the City deliberately allowed the foam to build up in high traffic areas where park patrons

11

frequented and did not block those areas off. "The jury could find this confluence of events made [Maggie's death] probable, as opposed to merely possible." *Reed*, 2019 WL 1324842, at *8. As to the City's argument that park attendance supports its position, "[e]vidence that the majority of prior guests were not injured . . . may be offered to the jury, but it does not establish as a matter of law that [Jayne's] gross negligence claim must be dismissed for lack of probability." *Id.*

## CONCLUSION

There are genuine issues of material fact for each element of Jayne's gross negligence and willful or wanton misconduct claim. Thus, it is

ORDERED that the City's motion for summary judgment (Docket 28) is denied.

Dated June 4, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE